**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ESSEX BUILDERS GROUP, INC., ,**

        **Plaintiff,**

-vs-                                             Case No.  6:06-cv-1562-Orl-31KRS

**AMERISURE INSURANCE COMPANY, PENNSYLVANIA GENERAL INSURANCE COMPANY, CAMDEN FIRE INSURANCE ASSOCIATION, ONEBEACON INSURANCE COMPANY and TRANSPORTATION INSURANCE COMPANY**

        **Defendants.**

_____

**PENNSYLVANIA GENERAL INSURANCE COMPANY,**

        **Counter Claimant,**

**vs.**

**ESSEX BUILDERS GROUP, INC.,**

        **Counter Defendant.**

_____

## ORDER

This matter comes before the Court on the motions for summary judgment filed by

Amerisure Insurance Company ("Amerisure") (Doc. 43), Camden Fire Insurance Company

("Camden") (Doc. 59), OneBeacon Insurance Company ("OneBeacon") (Doc. 60), Pennsylvania

General Insurance Company ("PGIC") (Doc. 61), and the replies thereto (Doc. 57, 87, 91) filed by

Essex Builders Group, Inc. ("Essex"), one of which (Doc. 87) contains a cross-motion for summary judgment.

**I.      Background**

Essex is a general contractor. Beginning in November 1996, a number of the Defendants issued twelve-month commercial general liability policies to Essex, in the following order: PGIC (1996-1997); Camden (1997-1998, 1998-1999); PGIC (1999-2000); and Amerisure (2000-2001, 2001-2002).[1]

**A.      The Cypress Point Project**

In 1992, Essex agreed to act as general contractor on a project that came to be known as the Cypress Pointe Resort ("Cypress Pointe"). (Doc. 42 at 5). On November 28, 2005, a construction defects suit was filed against Essex regarding Cypress Pointe. A second suit, involving similar allegations in the second phase of the project, was eventually filed against Essex. (Doc. 57 at 3 n. 13). PGIC, Camden, and Amerisure initially denied coverage for the Cypress Pointe claims. (Doc. 42 at 5-6). However, on September 25, 2006, Amerisure agreed to provide a defense to Essex as to both Cypress Pointe claims under a reservation of rights. (Doc. 57-4 at 2-18). On February 21, 2007, both Cypress Pointe claims were withdrawn with prejudice.[2] (Doc. 59 at 5).

---

[1] In its motion, Essex contends that the first four policies were issued by OneBeacon through its "affiiliates and/or wholly owned subsidiaries" PGIC and Camden (Doc. 87 at 3), but Essex provides no evidence that Camden or OneBeacon had any responsibility for the policies issued by PGIC, or that PGIC or OneBeacon had any responsibility for the policies issued by Camden.

[2] In its Second Amended Complaint (Doc. 42), Essex does not explain whether this dismissal resolved both Cypress Pointe claims, or only the first one. In fact, Essex does not refer to the second Cypress Pointe claim in its Second Amended Complaint.

**B.     The Harbortown Project**

In February 1998, Essex agreed to act as general contractor on what became known as the Harbortown project. In December 2004, the assignee of the owner of the Harbortown project, Northwestern Mutual Life Insurance Company ("Northwestern Mutual"), filed suit against Essex over alleged defects in the project. (Doc. 59 at 3). Both Amerisure and PGIC initially denied coverage for the Harbortown claim. However, in September 2006, counsel for PGIC notified counsel for Essex that PGIC would provide Essex with a defense against the Harbortown claim under a reservation of rights. (Doc. 1 at 5; Doc. 61-2 at 3). On September 25, 2006, Amerisure agreed to provide a defense for Essex as to the Harbortown claim under a reservation of rights. (Doc. 42 at 7).

**C.     Filing of the instant suit, conclusion of the underlying suits**

On October 6, 2006, Essex filed a two-count complaint before this court, contending that Amerisure (Count I) and PGIC (Count II) had breached their insurance contracts by refusing to defend against or provide indemnity for the Harbortown claim. (Doc. 1). On October 25, 2006, Essex amended its complaint, adding breach of contract claims in regard to the Cypress Pointe claim against the original defendants – Amerisure (Count III) and PGIC (Count IV). (Doc. 7).

On December 7, 2006, PGIC sought dismissal of the counts against it, alleging that any claims Essex might have for breach of contract had not yet accrued because no determination of liability had been made in the underlying suits. (Doc. 20). On January 25, 2007, the Court denied the motion, finding that Florida law permitted Essex to seek a declaratory judgment as to its insurers' obligations even before liability had been established in the underlying suit, and that even

though Essex's suit did not explicitly seek a declaratory judgment, the fact that the Court was empowered to grant it was sufficient to avoid dismissal. (Doc. 33).

Both the Harbortown and Cypress Pointe matters have been resolved. (Doc. 87 at 7). On January 25, 2007, after mediation, Amerisure and Camden reached a settlement with Northwestern Mutual in regard to the Harbortown suit.[3] Camden agreed to pay $75,000 of the $500,000 settlement amount, with Amerisure agreeing to pay the remainder. (Doc. 59 at 4). On February 21, 2007, the Cypress Pointe suit was dismissed with prejudice. (Doc. 42 at 6).

On March 16, 2007, Essex filed its Second Amended Complaint, adding Camden and OneBeacon as defendants along with PGIC in Counts II and IV.[4] As was the case with the previous two complaints, Essex did not include a request for a declaratory judgment.

## II.    Summary Judgment Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

---

[3] PGIC also participated in the mediation that resulted in settlement of the Harbortown claim but unlike Camden and Amerisure, it did not contribute. (Doc. 59 at 4). PGIC contends its policy limits were exhausted before the settlement was reached. (Doc. 59 at 4).

[4] Essex also added Defendant Transportation Insurance Company ("TIC"), which has not filed a motion for summary judgment. According to the Second Amended Complaint, TIC issued a one-year commercial general liability policy to Essex in December 2002. (Doc. 42 at 5). In Count V of the Second Amended Complaint, Essex alleges that TIC breached the policy by refusing to defend or provide indemnity for the Harbortown claim. (Doc. 42 at 12-13).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Analysis**

    **A.  Essex's Cross-Motion**

In Essex's view, with the Harbortown and Cypress Pointe matters having been resolved, all that remains is the issue of the attorney's fees it expended in bringing the instant suit. (Doc. 87 at 7-8). According to Essex, Amerisure and the "OneBeacon Entities" – Essex's term for OneBeacon, Camden, and PGIC – conceded Essex's entitlement to fees under Florida Statute § 627.468 by defending or settling the Harbortown and Crown Point claims.

   Florida Statute § 627.428(1) provides that

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of a insured or the named beneficiary under a policy or contract executed by the insurer, the trial court ... shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Although the literal language of Section 627.428 requires the entry of judgment in favor of the insured, Florida courts have construed the statute to authorize an award of fees when the insurer voluntarily pays the insured's claim before such a judgment can be rendered. *Wollard v. Lloyd's and Companies of Lloyd's*, 439 So.2d 217 (Fla. 1983).  In the words of the Florida Supreme Court, an insurance company that agrees to settle a disputed case "has, in effect, declined to defend its position in the pending suit," which makes the settlement payment "the functional equivalent of a confession of judgment or a verdict in favor of the insured." *Id.* at 218.  The *Wollard* court noted that strict adherence to the language of Section 627.428 would require a plaintiff who received an acceptable offer of settlement to continue litigating or lose its right to recover attorney's fees – discouraging settlement and burdening the justice system without any discernable benefit. *Id.* The Court concluded that the "literal requirement of the statute exalts form over substance to the detriment of public policy" and concluded that such a result was "clearly absurd." *Id.*

   The *Wollard* case involved the settlement of the insured's first party claim against its insurer, not the settlement by the insurance company of a third party's claim against the insured.[5]

---

[5]In its brief, Essex describes the *Wollard* case as one in which the insurer denied coverage, the insured was forced to file suit, and "[a]fter litigation had been pending for a time the insurer settled the claim against its policyholder." (Doc. 87 at 9).  This is a mischaracterization.  The *Wollard* case involved a "negotiated settlement between [the] insured and his insurer," *id.* at 218, not one between the third-party claimant and the insured or his insurer.

However, Florida courts have extended the *Wollard* "confession of judgment" rationale to third party coverage claims between an insured and an insurer, but only where the insurer filed the declaratory judgment action. *See*, *e.g., O'Malley v. Nationwide Mut. Fire Ins. Co.*, 890 So.2d 1163 (Fla. 4th DCA 2004). In *O'Malley*, the insurer defended its insured in a tort action under a reservation of rights and initiated a separate declaratory relief action as to the duty to defend and coverage. *Id.* at 1164. The insurer was able to settle the underlying tort action without having to pay any money,[6] after which it dismissed the declaratory action. *Id.* The insured sought fees under Section 627.428. *Id.* The trial court declined to award fees, finding that the insured had not prevailed because, unlike the insured in *Wollard*, she had not received any money from the insurer. *Id.* The appellate court reversed, finding that the trial court's focus on money ignored the benefit received by the insured:

> If Nationwide had obtained a judgment in the declaratory action, the insured would have been responsible for furnishing her own defense and resolving the tort claim. As it turned out, however, Nationwide furnished the insured a defense and settled the claim. Nationwide, in that action, provided the insured precisely what Nationwide was contending the insured was not entitled to in the declaratory action. When Nationwide dismissed the declaratory action, it was thus the "functional equivalent of a confession of judgment or a verdict in favor of the insured" in the declaratory action. *Wollard*, 439 So. 2d at 218.

*O'Malley* at 1164.

Essex is unable to point to any court extending *Wollard* to a separate declaratory judgment action filed by the insured. In the only case cited by the parties which addressed such a scenario – *Basik Exports & Imports, Inc. v. Preferred Nat. Ins. Co.*, 911 So.2d 291 (4th DCA 2005) – the

---

[6]The tort claimant obtained a jury verdict that was less than an offer of judgment that it had received, so the insurer was able to settle without paying any money to the claimant by waiving its own right to recover attorney's fees under the offer of judgment rule. *Id.*

Fourth District Court of Appeal declined to do so.  After noting *O'Malley* and one other case in which the *Wollard* rationale had been applied to insurer-initiated declaratory judgment actions, the *Basik* court explained that

> This case presents an entirely different scenario. ... [T]he insurer did not file suit against the insured.  It did not force the insured to retain counsel and incur fees.  And, it did not settle the underlying claim to avoid fees.

*Id.* at 294.  Moreover, the Court noted, public policy suggested that attorney's fees should not be awarded where the insured is the party that brings the declaratory judgment action:

> The purpose behind section 627.428, Florida Statutes, is to discourage insurers from contesting valid claims and to reimburse successful policy holders **forced to sue** to enforce their policies.  This valid purpose would be frustrated by extending the "confession of judgment" fiction in this case.
>
> Here, the insured was not "forced to sue" the insurer to be provided a defense.  In fact, the insurer appropriately provided the insured with a defense under a reservation of rights, pursuant to section 627.426(2), Florida Statutes (2004).  The insurer settled the claim on behalf of the insured within its policy limits, thereby protecting the insured from financial exposure. When it did so, the coverage issue became moot as the trial court found.
>
> If the insured is awarded attorney's fees under the facts of this case, insurers will be discouraged from settling third-party claims they defend under a reservation of rights for [fear that] settlement will subject them to paying attorney's fees for an unnecessary declaratory judgment action filed by the insured. It would also encourage insureds to rush to the courthouse to file a declaratory judgment action, even while being defended by the insurer, to secure attorney's fees under section 627.428. And, it may adversely affect insurers from defending under a reservation of rights. All of these outcomes will undoubtedly continue to increase the burden on the judicial system.

*Id.* (emphasis in original and internal citations and quotations omitted).

The Court agrees with the reasoning of the *Basik* court and finds that the *Wollard* confession of judgment rationale is not applicable in this case.  As in *Basik*, Essex has not produced any evidence that it was "forced to sue" to be provided a defense or otherwise enforce

any of its insurance policies.[7] As of October 2006, when Essex filed its initial complaint in this suit, it is undisputed that Amerisure and/or PGIC had already agreed to provide a defense in regard to both the Harbortown and Cypress Point suits.[8] Obviously, when this case was filed, none of the Defendants had an obligation to indemnify Essex, as Essex had not been found liable (or even reached a settlement) in respect to either claim. Thus, Essex's breach of contract claims are without merit. *See, e.g.*, *Travelers Indem. Co. of Ill. v. Royal Oak Enterprises, Inc.*, 344 F.Supp.2d 1358, 1366 (M.D.Fla. 2004) (duty to indemnify is narrower than duty to defend and must be measured by facts adduced at trial or developed through discovery taken during underlying tort action). Furthermore, unlike the situation in *Wollard* and *O'Malley*, the settlements entered into by the insurers in this case do not in any way suggest that Essex received a benefit from the filing of this action, such that it ought to be considered a "prevailing party" for purposes of Section 627.428. The Court agrees that public policy argues against an award of attorney's fees in cases such as this, as the prospect of such awards would encourage insureds to file pointless declaratory relief actions and discourage insurers from settling third party claims. *See Basik* at 294.

### B.     The Defendants' Motions

Camden argues that the claims raised against it by Essex have been rendered moot. (Doc. 59 at 7). An otherwise justiciable claim becomes moot, and thus beyond the jurisdiction of a

---

[7] The Court notes that Essex never sought a declaratory judgment in any of its complaints in this action.

[8] Essex argues that Amerisure had not paid any of its defense costs by the time it filed the instant suit. (Doc. 57 at 1). Standing alone, this fact is not enough to establish that Amerisure had breached its duty to defend or that this suit was needed to enforce its obligation to do so.

federal court, when subsequent events deprive the parties of any practical interest in the outcome of the litigation. *See, e.g., Fox v. Board of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). As Camden points out (and Essex has acknowledged), all of the underlying claims have been resolved without any contribution by Essex, and all of Essex's defense costs have been assumed by its insurers. (Doc. 59 at 7).

Despite arguing that the possibility of declaratory relief entitles it to receive its fees in this case, Essex made no effort to secure declaratory relief in any of its three complaints. Essex has sought damages for contractual breaches, not declarations as to the obligations of its insurers. Clearly, there is no possibility of Essex prevailing on breach-of-contract claims at this point. The only time the issue of a declaratory judgment came up was in the context of PGIC's motion to dismiss. Essex made no effort to compel any insurer to do the things for which it now seeks to take credit – i.e., requiring the insurers to provide a defense or indemnity.

Aside from the issue of entitlement to attorney's fees under *Wollard*, Essex's response focuses on veil-piercing, relation-back and other issues that are not relevant to Camden's mootness argument. (Doc. 87 at 12-20). Having already reject the *Wollard* argument, the Court is bound to find that, at least as to Camden, the instant case has been rendered moot and is due to be dismissed. *See also Basik*, 911 So. 2d 291 (affirming trial court's dismissal with prejudice of declaratory relief claim that had been mooted by insurer's settlement of third-party claim against insured).

Further, mootness is jurisdictional. *See Fox*, 42 F.3d at 139-40. Even though the other defendants have not raised the mootness issue, federal courts are obligated to inquire *sua sponte* whenever a doubt arises as to the existence of subject matter jurisdiction. *Vermeulen v. Renault*,

985 F.2d 1534, 1542 (11th Cir. 1993). After reviewing the Second Amended Complaint, the Court finds nothing to distinguish the claims that had been brought against Camden from the claims that have been brought against the other defendants. All of the claims consist of the same breach of contract allegations arising from the Harbortown and Crown Point claims. (Doc. 42 at 7-13). For the same reasons advanced by Camden in its motion, the claims against the remaining defendants have been rendered moot by the resolution of the Harbortown and Crown Point claims, and this Court lacks jurisdiction over this dispute.

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Cross-Motion for Summary Judgment (Doc. 87) filed by the Plaintiff, Essex Builders Group, is **DENIED**. And it is further

**ORDERED** that the Second Amended Complaint is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**. All pending motions are **DENIED AS MOOT** and the Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 26, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party